UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY W. BLANKENSHIP, | Civil Action No.: 17-10738<br>Honorable Avern Cohn<br>Magistrate Judge Elizabeth A. Stafford |
| Plaintiff, | |
| v. | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

# REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 11, 12]

Plaintiff Anthony Blankenship appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions[1], referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the ALJ failed to give good reasons on the

---

[1] Both parties also filed reply briefs in support of their respective motions for summary judgment. [ECF No. 13, 14].

record for according less than controlling weight to the treating physician's opinions, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 12] be **DENIED**;
- Blankenship's motion [ECF No. 11] be **GRANTED IN PART** to the extent it seeks remand, but **DENIED IN PART** to the extent it seeks reversal and a direct award of benefits; and
- the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and recommendation.

I. **BACKGROUND**

A. **Blankenship's Background and Disability Applications**

Born October 12, 1964, Blankenship was 50 years old at the time of his amended alleged onset date of October 12, 2014. [ECF No. 9-2, Tr. 20, 27]. He submitted his applications for disability benefits in April 2014 and was insured for DIB purposes through December 31, 2017. [ECF No. 9-2, Tr. 20; ECF No. 9-5, Tr. 145-158]. Blankenship has a limited education, but is able to communicate in English. [ECF No. 9-2, Tr. 27]. He has prior work history as a tow truck driver and as a crew manager. [*Id*.] He claimed to be disabled due to back problems, emphysema, and hypertension. [ECF No. 9-2, Tr. 22; *citing* Ex. 2E].

After the Commissioner initially denied his application, Blankenship requested a hearing, which took place in January 2016, during which he and a vocational expert (VE) testified. [ECF No. 9-2, Tr. 34-56]. In a February 9, 2016, written decision, the ALJ found Blankenship to be not disabled. [ECF No. 9-2, Tr. 15-33]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Blankenship timely filed for judicial review. [ECF No. 9-2, Tr. 1-6; ECF No. 1].

**B.     The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§

404.1520(a)(4); 416.920(a)(4).[2] Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[3] *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Blankenship was not disabled. At the first step, he found that Blankenship had not engaged in substantial gainful activity since his amended alleged onset date. [ECF No.

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

9-2, Tr. 20]. At the second step, the ALJ found that Blankenship had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy; status-post lumbar discectomy and laminectomy (2013); peripheral neuropathy; hypertension; and chronic obstructive pulmonary disease (COPD). [*Id.*] Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 21].

Between the third and fourth steps, the ALJ found that Blankenship had the following RFC:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting for six hours, standing for four hours, and walking for four hours; requires the use of a cane for frequent walking for pain and balancing; able to lift while using a cane; pushing and pulling is limited to as much as he can lift and carry; only occasional climbing of ramps and stairs; no climbing ladders or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; must avoid all hazards including unprotected heights, moving mechanical parts, and operating a motor vehicle; and must avoid concentrated exposure to humidity and wetness, respiratory irritants, and extreme temperatures.

[*Id.*, Tr. 21]. At step four, the ALJ found that Blankenship was unable to perform any past relevant work. [*Id.*, Tr. 27]. With the assistance of VE testimony, he determined at step five that Blankenship could perform occupations such as packer, sorter, and inspector and that those jobs

5

existed in significant numbers in the economy, rendering a finding that he was not disabled. [*Id.,* Tr. 28-29].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Blankenship argues that the ALJ erred in giving little weight to the opinions of his treating physician, Mushahid Raza, M.D., in not considering the effect of his use of a cane upon his ability to work, and in making an improper step five determination. The Court concludes that the ALJ erred by not providing the required good reasons for discounting the opinions of

6

Blankenship's treating physician and thus recommends that the Commissioner's decision be reversed.

**B.**

Blankenship's primary claim of error is that the ALJ failed to properly account for Dr. Raza's opinions as to his ability to perform work-related activities. In formulating Blankenship's RFC, the ALJ gave greater weight to the RFC assessment of Myung Ho Hahn, M.D., the state agency non-examining physician, than to the opinions of Dr. Raza. This decision was contrary to the cardinal rule regarding the weight given to treating medical opinions, and is not supported by the facts of this case.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and are not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. If an ALJ gives less than controlling weight to a treating physician's opinion he must give "good reasons" for doing so that are "supported by the evidence in the case record, and … sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

"Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). The Court will not hesitate to remand when the ALJ's opinion "do[es] not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (internal quotation marks and citation omitted).

Pertinent to this case, the treating physician rule is predicated on the detailed, longitudinal picture and unique perspective that such sources provide:

> 'Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'

*Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(D)(2)). For these reasons, a treating physician's opinion is entitled to great deference in all cases. *Gentry*, 741 F.3d at 723.

Dr. Raza has treated Blankenship regularly since at least September 2013. [ECF No. 9-7, Tr. 318-30; ECF No. 9-9, 344-423; ECF No. 9-10, 441-42; 443-45]. In January 2016, Dr. Raza completed a medical questionnaire and assessment of Blankenship's ability to do work-related activities. [ECF No. 9-10, Tr. 441-45]. In the questionnaire, Dr. Raza opined that Blankenship had "consistent" lower back pain with lumbar radiculopathy and muscle spasm. [*Id.*, Tr. 441]. He indicated that Blankenship was taking Norco, Flexeril and Motrin and that he was expected to follow-up with Nilesh Patel, M.D., who performed a lumbar discectomy/laminectomy[4] on Blankenship in January 2013. [*Id.*, Tr. 442].

---

[4] A discectomy is the surgical removal of herniated disc material that presses on a nerve root or the spinal cord. https://en.wikipedia.org/wiki/discectomy

A laminectomy is surgery that creates space by removing the lamina—the back part of the vertebra that covers your spinal cord.

9

At this time, Dr. Raza noted a "poor" prognosis because Blankenship had a poor recovery following his back surgery and thus would be unable to perform a full-time job on a sustained basis. [*Id.*]

Specifically with respect to Dr. Raza's assessment of Blankenship's ability to do work-related activities, Dr. Raza noted tenderness in the lower back and numbness of the lower extremities. [*Id.*, Tr. 443]. He indicated that Blankenship's ability to lift and carry was affected by his impairments and he could lift/carry a maximum of five pounds. [*Id.*] Blankenship could lift/carry this maximum load occasionally for 15 minutes every three hours, and frequently for 15 minutes every three hours. [*Id.*] Dr. Raza noted Blankenship's January 2013 low back surgery, with accompanying bulging disk to support the assessed reduction in capacity. [*Id.*] He opined that Blankenship could only stand/walk one hour in a regular eight hour day, required a cane or other assistive device when engaged in occasional standing/walking, and could only sit for 15 minutes during a regular eight hour day. [*Id.*, Tr. 444].

According to Dr. Raza, Blankenship would require unscheduled breaks/rests during the day every hour for 15 minutes, for a total of one to

---

https://www.mayoclinic.org/tests-procedures/laminectomy/basics/.../prc-20009521

two hours of rest in an eight hour workday. [*Id*.] He opined that Blankenship had significant limitations in his ability to reach, handle and finger; in both of his right and left extremities, he was limited for one to two hours in an eight hour day in his ability to grasp, turn and twist objects, fine manipulation, and in reaching (including overhead). [*Id*.] Dr. Raza believed that Blankenship's impairments would produce "good days" and "bad days" and he would likely be absent from work as a result of his impairments and treatment more than four days per month. [*Id*.]

Dr. Raza opined that Blankenship could occasionally turn his head, look up, and hold his head in a static position; that he could rarely look down or twist; and that he could never stoop, crouch/squat, climb ladders, or climb stairs. [*Id*., Tr. 445]. He concluded that, during a typical day, Blankenship's experience of pain or other symptoms was severe enough to "constantly" interfere with his attention and concentration needed to perform even simple work tasks. [*Id*.]

The ALJ assigned little weight to Dr. Raza's opinions, stating:

> The[] opinions from Dr. Raza are given little weight because they are not supported by the overall treatment records. This includes Dr. Raza's own aforementioned treatment notes dated since the amended alleged onset date reflecting no more than routine/conservative treatment, stable back pain, reports of traveling in January 2015, and minimal, if any, positive musculoskeletal or neurological findings upon physical exams (Exhibit 6F). In addition, the issue of whether a claimant is

11

> disabled is within the special purview of the Commissioner of Social Security (SSR 96-5p). In sum, Dr. Raza's opinions appear to underestimate Claimant's overall functional abilities and they are given little weight.

[ECF No. 9-2, Tr. 26]. The ALJ then assigned "great weight" to the RFC assessment of state agency medical consultant Dr. Hahn, who opined that Blankenship could perform light work. [*Id.*; *see also* ECF No. 9-3, Tr. 53-62]. The ALJ's decision to afford greater weight to Dr. Hahn's opinion over Dr. Raza's opinions was not, by itself, reversible error. "In appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996). One such circumstance may occur, for example, when the "State agency medical ... consultant's opinion is based on a review of a complete case record that ... provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

But here, Dr. Hahn offered his opinion on August 29, 2014. [ECF No. 9-3, Tr. 53-62]. Consequently, Dr. Hahn did not have the opportunity to review Dr. Raza's January 2016 medical questionnaire and assessment of Blankenship's ability to do work-related activities or much of the over 80 pages of Dr. Raza's treatment notes. [ECF No. 9-9, Tr. 344-423; ECF No. 9-10, Tr. 441-45]. And because much of the medical evidence reflects

12

ongoing treatment and notes by Dr. Raza, "we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of the complete case record.'" *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3).

Significantly, in *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009), the Sixth Circuit found that an ALJ erred in giving greater weight to a state agency physician than treating sources, where the agency physician did not review certain records from the treating sources, including an assessment, restrictions, and other treatment notes. In doing so, the Court held that "because much of the ... medical evidence [the state agency consultant did not review] reflects ongoing treatment and notes by Blakley's treating sources, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* (citations and internal quotation marks omitted).

To this end, the Sixth Circuit has instructed that if an ALJ gives less than controlling weight to a treating source's opinion, he must provide "good reasons" for doing so that are "supported by the evidence in the case record, and … sufficiently specific to make clear to any subsequent

13

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.*"* *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir.2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

The Commissioner urges that the ALJ has provided a sufficient evaluation of Dr. Raza's opinions, but the ALJ's analysis is in significant respects inconsistent with the objective record. For example, the ALJ characterized Blankenship's treatment for his back pain as "conservative," while the record indicates that he underwent a L5-S1 lumbar discectomy and laminectomy in January 2013. [ECF No. 9-7, Tr. 271]. *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *16 (E.D. Mich. Apr. 28, 2016) ("Palaghe underwent surgical spinal repair, a non-conservative therapy if ever there was one."); *Sanchez v. Colvin*, 2013 WL 1319667, at *4 (C.D. Cal. March 29, 2013) ("Surgery is not conservative treatment"). Following surgery, Blankenship underwent five sessions of physical therapy in January 2013, which were discontinued by physician recommendation due to his ongoing symptoms of pain and limited range of motion. [ECF No. 9-7, Tr. 294]. And in January 2014, Dr. Patel described Blankenship's symptoms as restarting after the discectomy and "getting worse." [*Id.*, Tr. 276]. Dr. Patel's examination revealed an antalgic gait,

14

below normal strength in several muscles, positive straight leg raising tests, and a "complete loss of pinprick in foot and ankle distribution of L4-5-S1." [*Id.,* Tr. 277-78]. He found that Blankenship had a herniated disc with radiculopathy. [*Id.,* Tr. 278].

Subsequently, after sustaining a fall in February 2014, CT scanning revealed degenerative disk disease and a broad-based disc bulge causing right neural forminal stenosis. [ECF No. 9-7, Tr. 284]. In June and August 2014, respectively, Dr. Raza also diagnosed Blankenship with herniated disc and lumbago, and in October 2014, he diagnosed him with peripheral neuropathy. [ECF No. 9-9, Tr. 345. 351. 359].

In July 2014, Martha Pollock, M.D., performed an independent medical examination of Blankenship, and found that he had a diminished range of motion in the back, a positive straight leg raising test; that he was unable to heel and toe walk, squat or hop; and that he required a cane to ambulate distances greater than 30 feet. [ECF No. 9-7, Tr. 332-34].

All of this evidence belies the ALJ's conclusion that the record demonstrated "minimal, if any, positive musculoskeletal or neurological findings" when giving limited weight to Dr. Raza's opinion. [ECF No. 9-2, Tr. 26].

15

Dr. Raza continued to treat Blankenship with on-going back pain throughout 2015. [*Id.*, Tr. 373, 378, 394, 401, 406, 413]. The record is also replete with notes of prescription medications that Blankenship has taken for his back pain, including Norco, Flexeril, Trazodone, and Motrin. [ECF No. 9-9, Tr. 345, 351, 394, 401, 406, 442]. *See Adamczyk-Drummond v. Colvin*, No. CV 15-13493, 2017 WL 710063, at *11 (E.D. Mich. Jan. 26, 2017), *adopted*, 2017 WL 697071 (E.D. Mich. Feb. 22, 2017) ("[A] claimant's use of strong narcotic medications has been considered consistent with allegations of disabling pain."); *Brewer v. Astrue*, No. 5:09-CV-3023, 2011 WL 1304889, at *4 (N.D. Ohio Apr. 1, 2011) (plaintiff's use of prescribed "strong narcotic pain medication" along with other treatment supported her credibility).

And even if the Court were to agree that substantial evidence supports the ALJ's weighing of Dr. Raza's opinions, substantial evidence alone does not excuse the ALJ's non-compliance with 20 C.F.R. § 404.1527(d)(2). *See Wilson*, 378 F.3d at 546 ("[T]o recognize substantial evidence as a defense to non-compliance with § 1527(d)(2)[] would afford the Commissioner the ability [to] violate the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantial factual or legal review is

16

appropriate, to 'set aside agency action … found to be … without observance of procedure required by law.'" (quoting Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001))).

The ALJ failed to give good reasons for giving little weight to Dr. Raza's January 2016 opinions and for giving greater weight to Dr. Hahn's opinion, and the Court should not hesitate to remand. *Cole*, 661 F.3d at 939. Given that the opinions of the treating physician must be re-evaluated, the ALJ will necessarily be required to re-assess the RFC finding in full. As such, it is not necessary to address plaintiff's remaining arguments at this time.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 12] be **DENIED**; that Blankenship's motion [ECF No. 11] be **GRANTED IN PART** to the extent it seeks remand, but **DENIED IN PART** to the extent it seeks reversal and a direct award of benefits, and the Commissioner's decision be **REMANDED** for further consideration.

Dated: October 13, 2017

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

17

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 13, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
